The second case of the day, Berry Plastics v. Illinois National Insurance. Mr. Edwards Good morning. May it please the court, this is an insurance coverage case in which Berry seeks coverage for a $7.2 million judgment entered against it that the jury in that underlining case found was caused by the failure of a Berry product. We're asking for reversal of summary judgment in favor of Illinois National Insurance Company because, as discussed in the briefs, the district court's order confused the definition of property damage with the scope of coverage, which are two different things, under a commercial general liability policy. And because the interpretation given by the district court conflicts with the plain and ordinary meaning of because of property damage, which is the key language at issue, and conflicts with Indiana law and the majority of courts that have decided this issue. But you are essentially asking us to say that the Indiana Supreme Court would reject our own analysis in PENDA and adopt a much more expansive understanding of the policies because of language, are you not? No, I don't think that's correct, Your Honor. In fact, the leading case from this court is the Wausau Underwriters case v. United Plastics, in which the court stated that, as in tort law, so in liability insurance law, once there is damage to property, the victim can recover the non-property, including business losses, resulting from that damage. And that's the majority rule in Wausau cited very often. PENDA was a 1992 case based on Illinois law, and respectfully, I don't think it survived either under Illinois law or under this court's Wausau opinion or its more recent H.D. Smith opinion. In Illinois, the rule of law now is driven by the LKQ Smart case, which was decided in 2011, in which the Illinois court held that once covered property damage exists, all consequential damages are covered. And the concern here is that the court in H.D. Smith, just last term, well, in 2016, noted that the difference in the language between coverage for property damage and coverage because of property damage that we have here is significant. That because of is much broader than for, and the court gave an example, in fact, in that case where, of a plaintiff that became paralyzed that was sued for, that sued for only the cost of making his home wheelchair accessible. The court said if we had a case where, or a policy that said we only had coverage for property damage, those damages would not be covered, but because we have coverage for damages because of property damages, those are covered. And respectfully, I don't think it expands anything in this sense. Number one, the key issue on these commercial general liability policies is whether there's property damage triggering the coverage. So that's one limitation. Once there's property damage triggering the coverage, the courts, including this court, have held that all damages because of, or resulting from, or caused by, that property damage are covered. And that appropriately limits, or makes concurrent the liability that the policyholder suffers and the potential, and the coverage for that liability that the policyholder has. It's intentionally very broad. And in fact, the court, yes, Your Honor. That there is no Indiana case directly on point. That's correct, Your Honor. But Indiana law says, number one, you follow the plain and ordinary language of the policy. And here, because of can have no other meaning as a plain and ordinary sense than cause. Its root is cause. Its origin is the Middle English by cause. But what happened here was the district court ruled that it doesn't mean cause. Does it ever mean that because of language would be limited to damages directly flowing from the property damage itself? And you're saying that because of extends to incidental damages, such as lost profits on future anticipated sales. That is some broad view of because of. I don't think it is, Your Honor. Number one, I think both statements you made are correct. Resulting from, flowing from, caused by, those are all covered. What the mistake that was made here was, based on a single California case, not based on PENDA. PENDA did not apply this definition. But based on a single California case, it's not even California law anymore. The court said because of means a measure of. Of course, the policy doesn't say a measure of. Absolutely relied on that National Union Fire case. The PENDA case, Your Honor? The California case. The California case, yes. The court's ruling in this case is derived really solely from the ReadyPAC California case. And it's the only case in the country that has followed ReadyPAC for that basis. And if you actually track California law, the rule in California is what I said it is everywhere else, including in this jurisdiction. And that is that if the precipitating event that triggered the coverage is property damage, then all damages resulting from that precipitating event are covered. There are limitations on recovery here, Your Honor. There are substantial limitations, for example, on the liability in the underlying case. We argued in the underlying case that the damages were speculative. That the plaintiff PACGEN should not be entitled to recover these damages. That their expert's opinion was speculative. The economic loss doctrine precluded the damages. We lost on all of those. And the issue here is if you have the triggering coverage, are the damages that the jury finds that were caused by that precipitating event covered or are they not? And if the ruling is that they're not or only a certain number of them, we're going to have a brand new branch of litigation in every case between insurance companies and policyholders as we have litigation in the underlying case on the issue of causation. And then we move forward to litigation in the coverage case on the issue of what damages the jury found were caused by are a measure of. So we're substantially limiting the coverage under the ruling here by the district court. And I think what the district court became, again, confused by was this difference between, and in fact, at the time of the event, Barry had two policies in place. One by Federal Insurance Company, a million dollar primary coverage that provided damage for property damage. And the second, the one we're here about today, a commercial umbrella policy written by Illinois National that provided broader coverage for damages because of property damage. Federal defended the entire case and paid its million dollars in coverage, even despite arguably, I suppose, having a different narrower scope of coverage. Here we have the broader scope of coverage at issue. And, again, the issue is significant not only because it denies Barry $6.5 million of a $7.2 million judgment that the jury in that case, based on proximate cause specifically found, were caused by the property damage at issue, but also because it separates liability coverage from underlying liability, which would be a substantial limitation on commercial general liability insurance coverage and cut against not only the plain or a meaning of because of as being broad and causal, but also the majority of courts, including this one, that have decided the issue. And on that, I want to briefly touch on estoppel because when the two are consistent, as they should be and as courts have held they should be, such that the liability insurance coverage for damages caused by property damage is consistent with the causal determinations that are made in the underlying litigation, there is no question that the jury in the underlying case ruled that the damages that they awarded against Barry were caused by the event at issue. You've seen some reference to a pure economic injury case. This is not, and no one contends it is, a pure economic injury case. Those cases are, in fact, I think if you read Ready Pack closely, it was a pure economic injury case because what the motion for summary judgment that was being ruled on in that case was that had been lost patronage because of an E. coli contamination at other restaurants. So they hadn't suffered any property damage. So in that sense, it was one of these pure economic injury cases. No one disputes that we have property damage here. And once you have property damage, that triggers the coverage under a commercial general liability policy and then that extends to all damages that are caused by that property damage. We've had an entire trial. This is a duty to indemnify case, and we've had an entire trial over what damages were caused by this event. We've had a jury determination, and we've even had a determination by the First Circuit Court of Appeals. So we know what damages were caused by. And under Indiana law, I would say there is authority directly on point, in the Frankenmuth case and the Metzler case and the other cases we've cited in our brief, that where the jury has decided the fact or issue at issue, that estoppel applies. And we think estoppel applies here. So not only are we seeking reversal of the district court's order granting summary judgment to Illinois National, but also entry of summary judgment for Berry Plastics. I'm so sorry, but I do have a problem with that argument. I'm not sure why you think the jury's decision as to what damages to award Paxson provided is a basis for estoppel. The jury was never asked to interpret the insurance policy and decide what damages were because of property damage. Were they? No, they were not, and that's not the basis for estoppel, Your Honor. Estoppel doesn't apply to the same legal question. Otherwise, it would just be the same case repeating itself. Estoppel applies to facts or issues that are decided below. In several cases, if held, we've cited them all in our brief, that facts and issues determined, including causation in the underlying case, apply in a subsequent coverage case. The only prerequisite being that the – yes, Your Honor. No, go ahead. Well, I see I'm into my rebuttal time, so I'll save it for rebuttal unless you have a question. Okay. Okay, thank you. Thank you, Mr. Edwards. Mr. Fredett? Counsel, may it please the Court, Patrick Fredett with the firm McCormick Barstow on behalf of Illinois National. You know, sometimes there's value, and it's interesting when you get a summary judgment order and you go through an appellate process, you go through the briefing, and then you have that passage of time when you get ready to present argument. So you have a period of time for fresh air to sit back and review the pleadings and reacquaint yourself with issues that you know well and to look at them sometimes in different ways. And it struck me that while this didn't seem to be true at the lower court level, that it has evolved true from Barry's disposition here, and I think it creates much of the confusion that, from my perspective and with all respect to Barry, that it has is Illinois National is not arguing, as Barry supposes, that the language because of is defined to mean a measure of damages. That's not at all true. Illinois National, even below, explained that because of has a causal element to it. What Illinois National has explained, however, is that once you have the precipitating damage, that is, let's call it property damage because that's germane here, to the extent there are consequential damages awarded, the focus on those consequential damages is whether those damages are a measure of physical damage to or loss of use of tangible property. And this walks you into PENDA, which we believe really is the equivalent of the case that we have here. And here's why. In Barry, there were IBCs that were manufactured that incorporated the Barry product. I believe there were a couple thousand. It's very clear in the record. Once there was that one defect and the relationships then soured, those 2,000 products that incorporated the defective product were destroyed. There was an element of damage derivative of that that was consequential from that destruction, which was a lost profit. That's the equivalent of the $200,000 lost profit in PENDA, where notwithstanding it was characterized as lost profit, the court correctly looked at it and said, notwithstanding its title or label, get behind it and let's see what it represents. And the court correctly observed in PENDA that it represented the damage for those books that contained the soiled paper. It's the same thing here. While those IBCs that were damaged and destroyed because they incorporated the defective product, while there is an element of consequential damages there that was compensated, what Barry would like us to do is springboard from PENDA and then leap into embracing anything residual, no matter its relationship at all to the transactions, just simply because they say because of is unlimited and embraces everything that flows. That is not only contrary with the form of a commercial general liability policy, but it is also contrary, candidly, with every single case that's addressed this specific issue. For example, PENDA, we've discussed. The Ready Pack case, clearly there was property damage and bodily injury because there is an E. coli problem. And the court had no problem concluding that the predicate harms were present, but in terms of the lost patronage claim, which is the equivalent of a lost profit claim, the court correctly observed that those damages aren't intended to compensate for the physical injury or loss of use of tangible property or for the bodily injury. The next case is the consolidated milk case. That's a case where there are creamers that were poured into coffee. It was determined that the cream itself was defective. The court concluded that that triggered property damage. And then there was a lost profit claim. And the claimant and insured ultimately said, I'm entitled to coverage for the lost profits because those lost profits are because of the damage. And the court rejected that and said, no, that's untethered. The damage is to the product itself, that is the coffee that contained the milk, but the lost profits relative to patronage or however you want to characterize it is not itself a measure of physical injury to tangible property or loss of use of property. The next case, Essex chemical formula. That was the case where there was a product used on floors that damaged the floors. The court concluded that that triggered property damage, but rejected the insured's demand for the lost profits that it claimed as a consequence of that because the court concluded that those lost profits did not themselves form a measure of the property damage. St. Paul Amcel also set forth in our brief. Damaged towels because of Petro. The court concluded that those towels represented property damage, but did not embrace the insured's argument like Barry argues here, that then it should extend to consequential damages of lost profits because those lost profits did not themselves represent a measure, again, of either physical injury to tangible property or loss of use of property. And so. You know, if we didn't have the guidance of cases like Penda and Ready Pack, there might be a logical appeal to Barry's argument that we should interpret because of to mean having a causal relationship with. You know, but that would be, of course, if we were looking at the issue for the very first time. Well, I your honor, I don't your characterization. I don't disagree with in a general sense. And and though that same question was what I think is implicit in Penda and was made explicit in Ready Pack, as well as consolidated milk. And the other cases I discussed where the courts looked at it, stepped back and contemplated what is the form and nature of a commercial general liability policy? And what is it intended to embrace? It's not intended to embrace as here, which was intangible economic loss for products that never existed, were never manufactured, and which Pac-Gen's expert labeled relationship damages. That's far too attenuated. And so while the question is practical, I think that the courts before you that have addressed the exact issue that's presented here have done so and defined it to say to retain continuity with the form and nature of the policy and what it's intended to embrace. Those consequential damages must necessarily be either, again, a measure of the physical injury or the loss of use of tangible property. And I think candidly, well, again, it may be more implicit, but in this court's case dealing with, I believe it's H.G. Smith, which was the case dealing with the opioid epidemic in West Virginia where I believe counsel's firm actually represented the insured in that particular case, where Cincinnati Insurance Company took the position that the state's expenditures to remedy the bodily injury claims by these unfortunate individuals did not represent bodily injury and didn't trigger the insuring agreement. And I think this court correctly said that that's not true because there's direct allegations of bodily injury. And then the court went on to acknowledge that the monies the state paid were intended to remedy that bodily injury. That is, they were for the care and, excuse the expression, feeding of individuals who were in the health system. And so that compensation was there to remedy that bodily injury. It's the equivalent of the $200,000 in PENDA where whatever you want to label it, you can't just stop at the label. You have to get behind it and understand its form and nature to thereafter go ahead and take the position of whether by its form and nature it's intended to be compensation for either the bodily injury or, as in here, for property damage. The other point of interest, too, is counsel referenced the LQ case, which is the case dealing with spoliation, and concluded that that's the Illinois case now that directs Illinois law. If that's true, that case by itself, again, is consistent with everything that we've presented to the court because while diminution value was the concept, and that is typically a generic economic concept, that diminution in value was, in effect, representative of the spoliation evidence and the representative of the value of the claim. Again, it becomes a measure of the damage. And so it makes sense why the court embraces it. I don't have much time left, and I do want to hit a couple of comments. One is counsel mentioned that California law has evolved from ReadyPAC. With all respect, that's incorrect. Now, counsel's platform for jumping in that direction is the AIU case. That was a case dealing with environmental contamination. In that case, it's entirely consistent with the analysis in PENDA, ReadyPAC, and all the other cases that address this proposition because in that case, the court said, look, there was property damage, and then the consequence of that property damage was the cost to remediate. Whether we call it diminution in value or not, those expenses were intended to address the damage to the tangible property. That's the AIU case, and as the ReadyPAC court itself acknowledged, that doesn't change the analysis or outcome. Again, what happens is, I think, that Berry in its attempts to invite a breadth of an insurance policy that simply just does not exist in the law will grab labels of claims without getting behind those labels and defining exactly what is it that those sums are intended to compensate. Now, in terms of the estoppel issue that was referenced, I agree wholeheartedly. First off, I think substantively we're right on the issue, but entertaining for sake of discussion and breadth and completeness and my ability to respond, that we're somehow not. The estoppel issue would not apply here because while the underlying case found the relationship damages to be a subject that ultimately Berry owned, that did not answer the question here, which is what is the form and nature of those damages vis-a-vis the insurance policy itself? That's an entirely separate question. The examples that Berry gives to feed this theme of estoppel explain quite clearly why it's inapplicable because those cases are conduct-based cases. Those are cases where, for example, in the liability case, there's a determination of negligence, and then the insurer steps in and seeks to relitigate the issue to try to transition it into an expected intended exclusion. In those cases, clearly the fact of the form of the liability was adjudicated. This is not a conduct-based issue. Again, this becomes what is the meaning of and breadth of the policy relative to consequential damages. Again, I would invite the court, and I think it has and certainly has a clear roadmap in front of it, of the cases that are out there. There's multiple cases. They all uniformly support Illinois Nationals' position, and there is no case, notwithstanding Berry's contention that all cases support its position, there is no case that has directly addressed this issue squarely and wrestled with Your Honor's thought process that without this guidance, you know, is there an interesting question before us, wrestled with that and decided that you have to discipline the analysis to be consistent with the intent and meaning of a general liability policy. I'll be glad to answer any other questions the court may have. Okay, apparently not. Thank you. Thank you. Thank you. Mr. Edwards. The only limitation on the coverage in the commercial general liability policy at issue is we will pay your liability because of property damage. That's either causal or it's not. What I heard was trying to split the baby there and say, well, it is causal. We can't deny that it's causal, but then there's this other limitation that we're going to call a measure of. That doesn't exist in the policy. Respectfully, every case supports Berry, and there's two things that you have to remember. One is that in many of these cases, including Penda, the court is guessing. The court's looking at a complaint, trying to judge whether there is an allegation here that triggers the coverage. The court is not going then on to say here's the scope of liability. In fact, in Penda the court said you have a duty to defend, and in H.D. Smith the court said you have a duty to defend, but they said we have to wait the outcome of the underlying litigation to determine the scope of your liability insurance company. We are there in this case. That's what makes this case unique from these other cases. We know what damages the jury found were caused by the event, and it's very important here to realize that there was only one product failure. It happened on April 8th, 2008. It caused property damage, and that was what was being litigated in the underlying case. I think Wausau is the leading case, and let me explain why. Wausau, the question was of these failed water heaters, only 55 or so, 60 of them failed under this one insurer's policy period, and the court remanded for a trial on the amount of damages that were caused by those 55 or 60 failures. Well, why would the court remand for damages if the rule is what Illinois National says, and it says you just do some math, right? You apply the cost of repairing these water heaters to the 55 or 60, and you enter judgment. The reason is, and the court itself said so, was it may be that these initial failures of these 55 or 60s caused the majority of the $25 million in damages awarded in that case, primarily lost profits and goodwill. The court said it might be that those few failures, because they happened early when they happened, caused this, and we need to go have a trial on what damages resulted from these early failures. That's exactly the point we're making here, which is that once you have the property damage, all damage is caused by that, and there's no disputing that the jury applied approximate cause analysis here. And there's also no disputing that both in H.D. Smith and in Wausau, and importantly, as we mentioned, the James River case, the court rejected a narrow interpretation in that case offered by the insurance company of arising from and said, look, one doesn't buy liability insurance just to protect oneself against being sued for inflicting foreseeable injuries. One buys protection against any claim arising from the potential liability-causing activity in which one engages. And in that case, the court held arising from was somewhere between but-for and approximate cause. This court doesn't have to decide whether it's but-for or approximate here today because the jury applied a more narrow approximate cause analysis. I understand that there's a concern that these were large damages. We were very upset ourselves with that, but the point is they were all determined to be caused by the property damage at issue. And the test was whether it's remedial, if that's what I heard today. These were remedial. There was nothing in here that was not remedial awarded by this jury, so it should be covered even under the argument I heard today from Illinois National. So I think I'm past my time. If you don't have any questions, that's all I have. All right, thank you, sir. Thank you very much. The case is taken under advisement, and the court will stand in recess for 10 minutes.